IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| GOLDSTAR EMERGENCY MEDICAL SERVICES, INC. | § § § | Case No. 05-36446 |
| | § | |
| GOLDSTAR E.M.S., LLC | § § | Case No. 05-40738 |
| GOLDSTAR E.M.S. II, LLC | § § | Case No. 05-41040 |
| THOMAS AMBULANCE SERVICE, INC. | § § | Case No. 05-41533 |
| GOLDSTAR E.M.S. IV, INC. | § § | Case No. 05-41566 |
| GOLDSTAR E.M.S. SOUTH TEXAS, INC. | § § § | Case No. 05-41568 |
| DEBTORS | § § | Jointly Administered Under Case No. 05-36446 |

**MEMORANDUM OPINION ON BANKRUPTCY COURT'S JURISDICTION TO DETERMINE MOTION FOR TURNOVER OF FUNDS**
[Docket Nos. 765, 773]

On January 12, 2007, this Court held a hearing solely on the issue of whether or not this Court had jurisdiction to consider and rule on the Motion for Turnover of Funds (the Turnover Motion) [Docket No. 765] filed by Avalon Finance, LLC (Avalon). One witness testified at this hearing: Walter Cicack (Cicack), counsel for Avalon, took the stand and testified regarding the circumstances and interactions with Sterling Bank leading up to the filing of the Turnover Motion. The Court finds Cicack to have been honest and credible in his testimony.

The purpose of this Memorandum Opinion is limited to analysis of the threshold issue of this Court's jurisdiction over the Turnover Motion. The merits of the Turnover Motion will not be

1

addressed, and nothing in this Memorandum Opinion should be construed as the Court making any judgment on the merits of the Turnover Motion. However, since this Court concludes that it does have jurisdiction over the Turnover Motion, a separate hearing on the merits will be set in a corresponding order.

### 1. The post-confirmation jurisdiction analysis under *Craig's Stores* is inappropriate in this case.

The crux of the jurisdictional arguments of both parties is whether this Court should consider the Turnover Motion under the case law analyzing post-dismissal or post-confirmation actions. If this a post-confirmation motion, the correct framework for determining this Court's jurisdiction is *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001). Conversely, if this a post-dismissal situation, then *Craig's Stores* would not apply.

This Court finds that this is a post-dismissal motion rather than the post-confirmation scenario contemplated by *Craig's Stores*. During the pendency of a bankruptcy estate, the statutory test for the bankruptcy court's jurisdiction is whether the proceeding is at least "related to" the main bankruptcy case. 28 U.S.C. § 157(a). The Fifth Circuit has defined "related to" in extremely broad terms as whether the outcome "could conceivably have any effect on the [debtor's] estate." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). In *Craig's Stores*, the Fifth Circuit intended to reduce the scope of the bankruptcy court's jurisdiction over suits filed after a plan has been confirmed, but it left the *Wood* analysis unaltered for pre-confirmation suits. The Fifth Circuit stated several policy reasons for this new, restrictive approach to post-confirmation bankruptcy court jurisdiction, none of which are applicable here.

First, the Fifth Circuit noted that the concept of the reorganized debtor is such that it is not entitled to overarching shelter of the bankruptcy court. "Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens." *Craig's Stores*, 266 F.3d at 390 (citing *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991)). This argument is inapplicable to the present case where Thomas Ambulance Service, Inc. (Thomas) was not part of the confirmed plan. Although Thomas continues to exist, it is not in the same position as a reorganized debtor would be in relation to its pre-petition or post-petition creditors. This is true primarily because no plan exists upon which Thomas and its creditors may rely.

Next, the Fifth Circuit stated:

> After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. *In re Fairfield Communities, Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1998); *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize. This theory has antecedents in our court's jurisprudence, which has observed that the reorganization provisions of the former Bankruptcy Act "envisage[] that out of the proceedings will come a newly reorganized company capable of sailing forth in the cold, cruel business world with no longer the protective wraps of the federal Bankruptcy Court." *In re Seminole Park & Fairgrounds, Inc.*, 502 F.2d 1011, 1014 (5th Cir. 1974). Because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases, we adopt this more exacting theory of post-confirmation bankruptcy jurisdiction.

*Id.* at 390-391.

This quotation shows that the foundation of *Craig's Stores* is that the newly emerged debtor no longer has to rely upon the Bankruptcy Court because it has the plan as a contractual basis to

proceed into the "cruel business world." Thus, if a dispute arises regarding the implementation of the plan, the bankruptcy court could have jurisdiction to see that the plan is correctly interpreted and enforced, but if a post-confirmation dispute arises between the debtor and a third party, then the reorganized debtor is without the protection of the bankruptcy court. The result would be the same even if the dispute involves a party under the plan, but relates to post-confirmation activities that are unrelated to any provisions in the plan. The Fifth Circuit concluded, "[i]n sum, the state law causes of action asserted by Craig's [i.e. the reorganized debtor] against the Bank do not bear on the interpretation or execution of the debtor's plan and therefore do not fall within the bankruptcy court's post-confirmation jurisdiction. *See* 11 U.S.C. § 1142(b)." *Id.* at 391. This statement is clearly premised upon the existence of a confirmed plan because the Court would be unable to determine if the dispute bears upon the execution of the plan without there being a confirmed plan.

Having concluded that the lynchpin of the applicability of *Craig's Stores* is the existence of a confirmed plan and a reorganized debtor, Sterling Bank maintains that the dispute at bar is still a post-confirmation suit because the cases were administratively consolidated into one joint case and, after Thomas was dismissed from that case, a plan was eventually confirmed. At the hearing, counsel for Sterling Bank repeatedly asked the Court to take notice that the Turnover Motion was filed under the jointly administered case and not under Thomas' own dismissed case number. Thomas and those cases which were part of the confirmed plan were jointly administered under the case number 05-36446. Although these cases were administratively consolidated, they were never substantively consolidated. "Administrative consolidation is merely a procedural devise used to efficiently deal with multiple estates, however, while substantive consolidation affects the substantive rights of the parties and therefore is subject to heightened judicial scrutiny." *Bergeman*

*v. Babcock and Wilcox Co.* (*In re Babcock and Wilcox Co.*), 250 F.3d 995, 959 n.6 (5th Cir. 2001); *see also* Fed. R. Bankr. P. 1015. The mere fact that Avalon filed the Turnover Motion within the jointly administered case does not change the underlying substance of the motion. It relates to Thomas as a dismissed party from the main case, and not as a party subject to the confirmed plan. This Court finds that since Thomas was dismissed prior to the confirmation of the plan, the *Craig's Stores* post-confirmation analysis is inapplicable.

2. **This Court has jurisdiction over the Turnover Motion under a post-dismissal analysis.**

Having determined that the *Craig's Stores* post-confirmation analysis is not the appropriate framework to analyze this Court's jurisdiction over the Turnover Motion, the Court turns to the issue of post-dismissal jurisdiction. Sterling Bank relies upon 11 U.S.C § 349[1] and several cases interpreting and applying that statute. Section 349 addresses the effect of a bankruptcy court's dismissal on orders that were issued during the case:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> > (1) reinstates—
> > (A) any proceeding or custodianship superseded under section 543 of this title;
> > (B) any transfer avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
> > (C) any lien voided under section 506(d) of this title;
>
> > (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
>
> > (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.
>
> 11 U.S.C. § 349(b).

---

[1] Unless otherwise noted, all section references are to 11 U.S.C.

The parties' dispute over this Court's jurisdiction arises from the inherent gap which is left between subsections (b)(2) and (b)(3). Avalon asserts that Congress could have included orders under §§ 363 and 364 in the enumerated list of vacated orders in § 349(b)(2), and Congress' failure to list cash collateral orders in that subsection means that dismissal should have no effect upon the continuing post-dismissal validity of any cash collateral order. Further, if § 349 does not vacate the order and it is still in effect, it would follow that the Court has the power to interpret and enforce its own orders under § 105.

Sterling Bank's interpretation of § 349 is that any orders which are not subject to vacation under the enumerated list in (b)(2) are still subject to the provisions of (b)(3) unless the court, for cause, orders otherwise *in the dismissal order*, not in the original order itself. This argument breaks down into two separate parts. Avalon has argued in favor of this Court's jurisdiction because the cash collateral orders included language contemplating the continuing enforcement jurisdiction of the bankruptcy court. [Docket No. 68, ¶ 38 and Docket No. 189, ¶ 59.] However, Sterling Bank counters that the construction of § 349(b) is such that subsection (b)(3) applies unless the court, for cause, orders that § 349 should not apply to a specific order.

The Court agrees that an exclusion from the application of § 349 could logically only be issued at the time of dismissal and not at the time of the original cash collateral order. The language in the cash collateral orders which attempts to retain this Court's jurisdiction to enforce these orders is clearly not the same type of language demanded under § 349(b). To mitigate the effect of dismissal, the Court would have to explain in its dismissal order why certain orders would not be subject to § 349. Here, it is undisputed that the dismissal order did not include such a provision for the cash collateral orders. However, this is only the first step of Sterling Bank's argument.

Sterling Bank next argues that since the Court's dismissal order did not exclude the cash collateral orders from being subject to § 349, the language of (b)(3) is designed to re-establish the *status quo ante* of all parties. Thus, even if the cash collateral orders are not enumerated in (b)(2), they are still subject to (b)(3), and in order to achieve the plain purpose of (b)(3), it is necessary that the cash collateral orders cease to be effective. The jurisdictional argument put forth by Sterling Bank is that if (b)(3) requires that the cash collateral orders be essentially rescinded or vacated, then there is no order left for the Court to enforce and there is nothing left to have jurisdiction over. Avalon counters that § 349(b)(3) is not designed to have the broad "undoing" effect that Sterling Bank is giving it, and that Sterling Bank's interpretation would cause post-petition creditors who detrimentally rely on the continuing validity of their liens and jurisdiction of the bankruptcy courts to bear all the risk of a failed reorganization in contravention of the fundamental purposes of §§ 363 and 364. Each party presented case law to support their position.

Sterling Bank relies primarily upon two cases: *Cimo v. Petty (In re Petty)*, 848 F. 2d 654 (5th Cir. 1988) and *Christie v. First State Bank of Stratford (In re Keener)*, 268 B.R. 912 (Bankr. N.D. Tex. 2001). In *Petty*, the debtor's bankruptcy case was dismissed while there was a pending motion to automatically reject a lease under § 365(d)(4). *Petty*, 848 F.2d at 655. After the case was dismissed, the bankruptcy court entered an order denying the § 365(d)(4) motion which was signed with a date that preceded the dismissal of the case. *Id.* The Fifth Circuit found that the bankruptcy court had no jurisdiction to deny a pending motion after the case had already been dismissed. *Id.* Sterling Bank emphasizes that the Fifth Circuit noted that § 349 was designed to "'undo the bankruptcy case', restoring property rights to their pre-cause status." *Id.* (citing S.Rep. No. 95-989, 95th Cong. 2d Sess. 48-49 (1978)).

7

Despite the Fifth Circuit's holding that the dismissal of the case effectively terminated the bankruptcy court's jurisdiction to enter an order which would alter property rights from their pre-action status, this Court believes that *Petty* is inapplicable to the analysis of post-confirmation jurisdiction in this case. The key difference between *Petty* and the present facts is the that the bankruptcy court in *Petty* was not seeking to enforce a prior order but was trying to enter a new order post-dismissal; whereas in the present case, Avalon is not seeking the entry of a new order, but merely asking the court to enforce the terms of a cash collateral order which was entered pre-dismissal. Analogizing the present facts to *Petty*, it would be as if the bankruptcy court were to grant a motion to reject a lease during the bankruptcy case, and then after dismissal the landlord asserted that § 349 meant that the lease was never rejected because the dismissal "undid" the bankruptcy to put parties in their relative pre-petition positions. Under those facts, the bankruptcy court would clearly have jurisdiction to enforce its order rejecting the lease and would not allow the landlord to seek rent for the period after the § 365 motion had been granted.

*Keener* was a Chapter 12 case[2] in which a plan was confirmed, but the case was dismissed just six weeks later. *Keener*, 268 B.R. at 916. The farm that was the subject of the Chapter 12 case was foreclosed upon and sold after the dismissal. *Id.* The debtor then filed a Chapter 7 case and sought to recover excess proceeds from the foreclosure sale. *Id.* at 917. The dispute related to which notes were secured by the property that was foreclosed upon; if only the pre-petition notes were secured, then there would be an excess; but, if all the notes that were agreed to be secured under the

---

[2] The court in *Keener* acknowledged the fact that its holding would be inapplicable under the same circumstances in a Chapter 11 case because, unlike the confirmation of a Chapter 12 plan, the confirmation of a Chapter 11 plan created an immediate discharge, and the Plan would be the governing document. *Keener*, 268 B.R. at 919-920. Although the case at bar does involve a Chapter 11, this Court has already established that no plan was confirmed vis a vis Thomas and thus *Keener* cannot be distinguished on this point alone. Finally, in passing, this Court would note that in the wake of the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act, individuals who obtain confirmation of Chapter 11 plan no longer receive a discharge upon confirmation; they receive a discharge only after completion of all payments under the plan. 11 U.S.C. § 1141(d)(5).

confirmed and subsequently dismissed plan remained secured, there would be a deficiency. *Id.* The bank argued that § 349(b) did not change the results of the confirmed plan because Congress did not expressly include confirmation orders in the enumerated list of (b)(2) that are automatically vacated. *Id.* The court found that the intent of § 349 was to return the debtor to its pre-petition position as much as possible while still protecting the rights of parties which had detrimentally relied on the court's confirmation order. *Id.* at 919. In holding that the plan was vacated, the court noted that "[s]ince rights that the debtor acquires as a result of bankruptcy are usually an extension of the debtor's ability to abide by terms of the Bankruptcy Code, the debtor who is unwilling or unable to comply with the Code generally should not receive the benefits of bankruptcy once the case is dismissed." *Id.* at 920 (citing *In re Derrick*, 190 B.R. 346 (Bankr. W.D. Wis. 1995).

Although the Court agrees with this proposition in general, it is approached from the wrong party's point of view. In the present case, it is not the debtor that is seeking the continuing protection the bankruptcy court, but rather it is a creditor who materially changed its position in reliance upon an order issued by this Court during the bankruptcy case. Avalon is not the party who was "unwilling or unable to comply with the Code." In fact, the opposite is true; the creditor here desires this Court to have continuing jurisdiction over one of its own orders. Based on this crucial difference, this Court does not believe that the holding is *Keener* is applicable to this case.

Avalon asks this Court to adopt the holding of *Tri-River Chemical Co. v. TNT Farms (In re TNT Farms)*, 226 B.R. 436 (Bankr. D. Id. 1998), a case which appears as a contrary footnote in *Keener*. *Keener*, 268 B.R. at 920 n.5. Although *TNT Farms* was also a Chapter 12 case, the plaintiff was attempting to enforce its priority liens received pursuant to cash collateral orders in prior Chapter 12 cases which had been dismissed. *TNT Farms*, 226 B.R. at 439-400. With the exception of this case being a Chapter 11, the facts in *TNT Farms* are much closer to the present case than

9

either *Keener* or *Petty*. The court considered the effect of Congress' omission of § 363 from the enumerated list in § 349(b)(2) and found such an omission "manifested the intent of Congress to leave orders entered under Section 363 unaffected unless otherwise provided by the Court." *Id.* at 441; *see also Wytch v. Pacific Reconveyance (In re Wytch)*, 223 B.R. 190 (9th Cir. B.A.P. 1998).

*TNT Farms* also justifies its ultimate result on the merits in terms of a public policy argument that liens under §§ 363 and 364 must continue to be valid after dismissal or otherwise many debtors would have difficulty obtaining debtor-in-possession financing. *TNT Farms*, 226 B.R. at 442. This Memorandum Opinion is limited to jurisdiction, and does not reach the merits, but a similar public policy argument applies to the jurisdictional issue. A bankruptcy court must have the jurisdiction to enforce its own orders which parties have detrimentally relied upon, even after a dismissal, because the opposite result would encourage forum shopping. If the court's authority over its own orders were always to be terminated after dismissal, a debtor who was unhappy with the bankruptcy court's order could seek to dismiss the case and the creditor's exclusive recourse would be in state court. This leads to Sterling Bank's next argument, which is that Avalon's Turnover Motion is an attempt at forum shopping to accomplish in this Court what Avalon could not obtain in state court.

3.  **The Turnover Motion is not an attempt by Avalon to forum shop.**

At the hearing, counsel for Sterling Bank argued that Avalon was forum shopping because Avalon first went to state court to seek appointment of a receiver for the Thomas account. Cicack, counsel for Avalon, testified extensively at the hearing regarding this decision. Cicack had several conversations with in-house counsel for Sterling Bank about the steps needed to be taken so that Sterling Bank would turn over the funds to Avalon. During these conversations, in-house counsel for Sterling Bank did not raise the issue of the Bank's potential claim of a lien superior to Avalon.

Instead, Cicack was instructed by in-house counsel that Sterling Bank could not, and would not, turn over the funds without the appointment of a receiver by the state court. It was only after Avalon had already taken steps to establish a receivership and obtained a turnover order from the state court that Sterling Bank, for the first time, asserted its superior right of set-off to the funds in the Thomas account. Avalon only came to this Court to file this Turnover Motion after being faced with this new position of Sterling Bank. At the hearing, counsel for Sterling Bank attempted to cast this decision to go to state court as Cicack negligently relying on the legal advice of Sterling Bank's in-house counsel. It is neither fair nor equitable for this Court to allow Sterling Bank to first suggest to Avalon that the Bank would comply as long as Avalon obtained the appointment of a state court receiver, and then to argue that this same action is grounds to support a finding of forum shopping. Sterling Bank put Avalon in this position; it is not Avalon who is fleeing the state court voluntarily for fear of an adverse judgment. In light of the circumstances leading up to the filing of the Turnover Motion, Sterling Bank's argument that this motion has the indicia of forum shopping rings hollow.

### 4. Conclusion

For the reasons stated above, this Court finds that 1) this is not a post-confirmation dispute and the test for jurisdiction in *Craig's Stores* does not apply to the present facts; and 2) this Court does have jurisdiction under a post-dismissal analysis because Avalon is seeking the interpretation and enforcement of an order that this Court entered pre-dismissal and upon which Avalon detrimentally relied. Because this Court finds that it has jurisdiction to hear the Turnover Motion, a separate hearing on the merits will now be set.

Signed this 23th day of January, 2007.

Jeff Bohm
United States Bankruptcy Judge